**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JONATHAN M. H.,[1]
    Plaintiff,

        v.                                    Civil No. 3:21-cv-00600 (HEH)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for a period of disability, disability insurance benefits and supplemental security income under the Social Security Act ("Act"). At the time of his application date, Plaintiff was thirty-seven-years-old with a high school-level education who previously worked as a laborer, and wholesaler. (R. at 199, 204, 269.) Plaintiff alleges he is unable to work due to osteoarthritis in his legs and depression. (R. at 268.)

On March 23, 2021, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12-29.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further

Plaintiff seeks review of the ALJ's decision, arguing that: (1) the ALJ erred in failing to find Plaintiff's depression to be a severe impairment, and failed to consider Plaintiff's depression in formulating the residual functional capacity; (2) the residual functional capacity is not supported by substantial evidence because the ALJ erroneously assessed the medical opinion evidence of Mark D. Russ, M.D. ("Dr. Russ"); and (3) the 18,300 jobs identified by the vocational expert ("VE") are nationally and regionally insufficient. (Pl.'s Mem. Supp. Mot. Summ. J. at 8-15, ECF. No. 18[3] ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 17) and Motion to Remand (ECF No. 19) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on July 11, 2019, alleging disability beginning January 1, 2018. (R. at 199, 204.) On December 18, 2019, Plaintiff amended his alleged onset date to July 14, 2017. (R. at 211-12.) The SSA denied Plaintiff's claim on November 12, 2019 (R. at 54-73) and again upon reconsideration on April 2, 2020. (R. at 78-103.) Plaintiff requested a hearing before an ALJ, and a hearing was held on January 12, 2021. (R. at 132-39, 35-53.) At the hearing, Plaintiff again amended his alleged disability onset date to August 28, 2019. (R. at 39.) On March 23, 2021, the ALJ issued a written opinion holding that Plaintiff was not disabled under the Act. (R. at 12-29.)

---

restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

[3] Plaintiff filed a Memorandum in Support of his Motion for Summary Judgment, ECF No. 18. He filed the same Memorandum in Support of his Motion to Remand, ECF No. 20. As the documents are identical the Court will cite to the first memorandum filed, ECF No. 18, throughout this Report and Recommendation.

Plaintiff requested review of the ALJ's decision. (R. at 5.) On August 10, 2021, the SSA Appeals Council denied the request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence, and it includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*,

340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support an ALJ's determination or if an ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

SSA regulations set forth a five-step process that an ALJ employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, an ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, an ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires an ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, an ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. §§ 404.1545(a), 416.925(a).

At step four, an ALJ assesses whether the claimant can perform his past work given his residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 404.1520(e), 416.920(e). However, if the

4

claimant can perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 15-29.) *See* 20 C.F.R. §§ 404.1520(a) 416.920(a); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity[4] since the amended alleged onset date, August 28, 2019. (R. at 18.) At step two, the ALJ determined that Plaintiff had the "following 'severe' impairments: osteoarthritis in both knees, 20 (C.F.R. 404.1520(c) and 416.920(c))." (R. at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.)

The ALJ then determined Plaintiff's residual functional capacity[5]. (R. at 21-27.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform

---

[4] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[5] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule),

sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations: "[H]e can occasionally perform postural activities but cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; and occasionally use foot controls. [Plaintiff] should avoid concentrated exposure to vibrations and extreme cold temperatures; and avoid exposure to industrial hazards." (R. at 21.)

The ALJ explained that he determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and Social Security Ruling 16-3p." (R. at 21.) Based on his residual functional capacity findings, the ALJ concluded at step four that Plaintiff was not capable of performing past relevant work. (R. at 27.)

At step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 28-29.) The ALJ considered the testimony of a VE, who opined that Plaintiff could perform the requirements of representative occupations such as addressing clerk (6,200 jobs in the in the national economy), production assembler (7,600 jobs in the in the national economy), or stuffer (4,500 jobs in the in the national economy). (R. at 28.) Therefore, the ALJ determined that Plaintiff was not disabled under the Act. (R. at 29.)

### IV. ANALYSIS

Plaintiff moves this Court to review the Commissioner's decision to deny his application for benefits, or, in the alternative, to remand the claim for further proceedings. (Pl.'s Mem. at 15-16.) In support, Plaintiff argues that: (1) the ALJ improperly classified Plaintiff's depression as

_____

and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

non-severe and failed to incorporate Plaintiff's depression into the residual functional capacity; (2) the residual functional capacity overstates Plaintiff's abilities because the ALJ improperly assessed the opinions of Dr. Russ and the prior administrative findings; and (3) the 18,300 jobs identified by the VE are nationally and regionally insufficient. (Pl.'s Mem. at 8-15.) Defendant argues that the ALJ's decision should be affirmed because the ALJ: (1) properly considered Plaintiff's depression; (2) properly assessed the opinions of Dr. Russ in accordance with the regulations; and (3) did not err at step five when he found that there were 18,300 representative jobs in the national economy that Plaintiff could perform. (Def.'s Mot. Summ. J. 13-22 ECF No. 23 ("Def.'s Mem.").)

### A. Substantial Evidence Supports the ALJ's Determination of Plaintiff's Depression was Non-Severe.

Plaintiff argues that the ALJ erred in finding his depression was not severe. (Pl.'s Mem. at 1, 8-10.) He asserts that the ALJ improperly found depression non-severe by relying on non-examining state agency consultants, and the indications his mental health conditions were controlled with treatment. (Pl.'s Mem. at 9 citing R. at 18-19.) Defendant asserts the ALJ's finding that Plaintiff's depression was not severe is supported by substantial evidence. (Def.'s Mem. at 16-24.) Further, Defendant asserts that the ALJ fully reviewed the record, testimony, and medical opinions and found Plaintiff's subjective statements inconsistent with the medical records. (Def.'s Mem. at 16 citing R. at 19-20, 24, 26-27.)

At step two, the ALJ considers the "medical severity" of a claimant's "medically determinable" impairments. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To constitute a "medically determinable" impairment, a claimant's alleged impairment "must be established by objective medical evidence from an acceptable medical source." §§ 404.1521, 416.921. "[O]bjective medical evidence" means "laboratory findings" or "abnormalities that can be observed, apart from your statements (symptoms)." §§ 404.1502(f) & (g), 416.902(f) & (g). The ALJ "will not use [a

claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." §§ 404.1521, 416.921.

If an impairment is medically determinable, the ALJ then determines whether such impairment is "severe." *Id*. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c), 404.1522(a), 416.922(a). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months" to be "severe." §§ 404.1509, 416.909, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In the instant case, at step two, the ALJ concluded that Plaintiff's anxiety and depression, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities, and are therefore non-severe." (R. at 18.) The ALJ explained that Plaintiff's provider characterizes his anxiety and depression as controlled. (R. at 19.) Additionally, she noted that Plaintiff's mental status has been grossly intact with routine treatment. (R. at 19.)

The ALJ did not err in concluding that Plaintiff's depression and anxiety were not severe impairments. In making his finding, the ALJ considered the broad functional areas of mental functioning set forth in the disability regulations for evaluating mental disorders and in the Listing of Impairments. *See* 20 C.F.R., Part 404, Subpart P, App'x 1. Known as the "paragraph B" criteria, these four functional areas are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. *See id*.

The ALJ found that Plaintiff has a mild limitation in the first area of mental functioning: understanding, remembering, or applying information. (R. at 19.) He reasoned that Plaintiff's function reports do not indicate significant difficulty in this area. (R. at 19 citing 282, 329.) The

ALJ noted Plaintiff's providers found he exhibited appropriate judgement, insight, recent and remote memory, and came across alert, oriented, and coherent. (R. at 19 citing 404.) Further, the ALJ noted that on several occasions Plaintiff complained to his providers he was depressed but he did not indicate he had any memory deficits or change in thought. (R. at 19 citing 457, 825.) Finally, the ALJ noted Plaintiff's provider indicated while he seemed depressed, Plaintiff was alert, oriented, coherent, and interactive. (R. at 19 citing 826.) There is substantial evidence to support the ALJ's finding that Plaintiff has a mild limitation.

The second functional area is interacting with others. The ALJ found that Plaintiff had no limitation in interacting with others. (R. at 19.) The ALJ discussed that Plaintiff alleges "he is less social and sometimes has difficulty getting along with others due to pain." (R. at 19, citing 282, 329.) The ALJ stated that Plaintiff's treatment notes do not contain objective evidence supporting loss in his ability to interact with others. (R. at 19.) The ALJ notes that providers have indicated Plaintiff was calm, cooperative, pleasant, clean, coherent, and interactive despite being in pain. (R. at 19 citing 412, 420, 576, 548, 826.) Plaintiff testified that he does not go out often due to crying spells caused by pain. (R. at 45.)

The ALJ then turned to the third functional area, Plaintiff's ability to concentrate, persist, and/or maintain pace. (R. at 19-20.) The ALJ found Plaintiff had a mild limitation in this area. (R. at 19.) In making this determination, the ALJ stated while Plaintiff "alleges problems with concentration and completing tasks, partly due to pain…" the treatment notes do not contain objective evidence of loss in this area. (R. at 19-20.) The ALJ noted that in February 2019, Plaintiff was present, alert, and oriented with logical thoughts. (R. at 20 citing 404.) In July 2019, the ALJ discussed Plaintiff was again noted to be alert and oriented. (R. at 20 citing 423.) In August 2019, Plaintiff reported no change in thought processing and was found to be alert and not agitated. (R.

at 20 citing 457.) The ALJ further cited appointments in June and September 2020 where the Plaintiff was noted to be alert. (R. at 20 citing 553, 573, 624.) Finally, the ALJ noted that Plaintiff was able to drive and handle money without assistance. (R. at 20 citing 280, 327.)

The ALJ finally addressed Plaintiff's ability to adapt or manage himself. (R. at 20.) The ALJ found that Plaintiff had no limitation in his ability to adapt or manage himself. (R. at 20.) Plaintiff asserted difficulty handling stress and fear of not being able to provide for his family or work on his car. (R. at 20 citing 283, 330.) However, the ALJ determined that the treatment notes did not contain objective evidence that Plaintiff is limited in this area. (R. at 20.) In support of this determination, the ALJ noted that throughout the record, Plaintiff was noted to be pleasant, appropriate, cooperative, clean, interactive, and coherent. (R. at 20 citing 412, 420, 576, 548, 826.) Additionally, the ALJ noted Plaintiff: (1) can drive; (2) can handle money without assistance; and (3) does not need to be accompanied outside of the home. (R. at 20, citing 280-81, 327-28.)

1. *Substantial evidence supports the ALJ's finding that Plaintiff had a mild limitation in understanding, remembering, or applying information.*

The ALJ did not err when he found that Plaintiff had a mild limitation in understanding, remembering, or applying information. The ALJ noted that the "treatment notes contained little to no evidence of functional loss in this area." (R. at 19.)

Plaintiff asserted in his function report that his illness, injuries, or conditions did not affect his ability to understand, or his memory. (R. at 282.) As noted by the ALJ, Plaintiff's treating doctors documented that while Plaintiff was positive for anxiety and depression, he exhibited no memory deficits or change in thought processing. (R. at 19 citing 825.) Plaintiff's providers found on multiple occasions that he did not have any memory deficits or changes in thought processing. (R. at 830, 832, 834, 836, 838, 840, *passim*.) Further, Plaintiff was found to be alert, and oriented in time, place, and person. (R. at 830, 832, 834, 836, 838, 841, *passim*.) Therefore, substantial

evidence within the record supports the ALJ's determination that Plaintiff had a mild limitation in his ability to understand, remember, or apply information.

> 2. *Substantial evidence supports the ALJ's finding that Plaintiff had no limitation in interacting with others.*

The ALJ determined that Plaintiff had no limitation when interacting with others based on the ALJ's examination of the record and testimony. (R. at 19.) The ALJ noted that Plaintiff asserted: (1) he is less social and sometimes has difficulties getting along with others; and (2) his difficulties were due to his pain. (R. at 19. citing 282, 329.)

The record supports these findings. For instance, Plaintiff asserted his conditions did not affect his ability to get along with others. (R. at 282.) He does not need to be accompanied outside the home. (R. at 280, 327.) Additionally, Plaintiff was found to be cooperative and his behavior appropriate even though he asserted he was in great pain. (R. at 548, 576.) The record supports the ALJ's finding that Plaintiff is not limited in his ability to interact with others. Therefore, the ALJ's finding was not in error.

> 3. *Substantial evidence supports the ALJ's finding that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace.*

The ALJ examined the record and determined that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace. (R. at 19-20.) The ALJ noted Plaintiff contended that he had difficulty paying attention and concentrating due to pain. (R. at 19, citing 282.) However, the ALJ determined that the record did not contain "objective evidence of functional loss in this area, such as overt lethargy, inattention, or slow thinking, speech, or movements." (R. at 19-20.) Additionally, the ALJ found that Plaintiff's providers noted he had no change in thought processing, was otherwise alert, and oriented. (R. at 20.) This is supported by the record as throughout, Plaintiff's providers noted that he was alert and oriented with no changes in thought

processing. (R. at 731, 825, 830, 832, 834, 836, 838, 841.) Therefore, substantial evidence supports the ALJ's finding that Plaintiff had no more than a mild limitation in concentrating, persisting, or maintaining pace.

        4.  *Substantial evidence supports the ALJ's finding that Plaintiff had no limitation adapting or managing himself.*

The ALJ found that Plaintiff has no limitation adapting or managing himself. (R. at 20.) The ALJ noted that the record did not contain objective evidence of functional loss in this area. (R. at 20.) Plaintiff reported he is able to drive, handle money without assistance, and does not need to be accompanied outside the home. (R. at 20 citing 280, 327-28.) Plaintiff asserted in his function report that he can dress, bathe, care for his hair, shave, feed himself, and use the toilet. (R. at 278.) However, Plaintiff indicated that his knee pain made the tasks more difficult. (R. at 278.) Plaintiff further asserted he did not need reminders to care for his personal needs or hygiene. (R. at 279.) He also does not need to be reminded to take his medicine. (R. at 279.) Therefore, there is substantial evidence in the record that supports the ALJ's finding that Plaintiff has no limitation in adapting or managing himself.

## B. Substantial Evidence Supports the ALJ's Determination of Plaintiff's Residual Functional Capacity.

Plaintiff argues that the ALJ's determination of his residual functional capacity is improper as the ALJ failed to properly evaluate the opinion of Dr. Russ. (Pl.'s Mem at 1.) Specifically, Plaintiff argues that the ALJ erred by not including all limitations Plaintiff asserted and Dr. Russ noted. (Pl.'s Mem. at 10.) Defendant argues that "the ALJ was not bound by the less-than-sedentary limitations suggested by Dr. Russ" since the ALJ found the opinion of Dr. Russ to be

not persuasive. (Def.'s Mem. at 19, citing 25-26.) Further, Defendant argues that the ALJ properly evaluated the opinion of Dr. Russ under the regulations. (Def.'s Mem. at 19-20.)

As an initial matter Plaintiff argues that the medical evidence and testimony supports the opinions of Dr. Russ and thus, his opinions should be afforded great weight. (Pl.'s Mem. at 13.) Plaintiff's argument appears to be an invitation for this Court to re-weigh the evidence that has already been considered and weighed by the ALJ. This Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d, 585, 589 (4th Cir. 1996.) Therefore, this Court will examine the ALJ's evaluation of the opinion of Dr. Russ and determine whether the evaluation comports with the regulations.[6]

    1.  *The ALJ properly evaluated the Opinion of Dr. Russ.*

        a.  <u>Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.</u>

As an initial matter, for claims filed on or after March 27, 2017, revised regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must

---

[6] Plaintiff briefly alleges that the ALJ improperly evaluated the opinions of the non-examining medical consultants. (Pl.'s Mem. at 13.) Plaintiff's failure to develop arguments regarding these contentions waives any claim involving them. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 U.S. Dist. LEXIS 29535, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do."). Accordingly, the Court will not address these contentions in this Report and Recommendation.

consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a), (b).

Under the regulations,[7] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. § 404.1520c. Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2). Supportability and consistency are explained in the regulations as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain

---

[7] Because Plaintiff filed his disability claim after March 27, 2017, Section 404.1520c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

  b. <u>The Opinion of Dr. Russ.</u>

  In October 2020, Dr. Russ submitted an arthritis medical source statement and a separate note specifically articulating issues with disfunctions of a weight bearing joint. (R. at 593-599.) Dr. Russ asserted he has seen Plaintiff "several times a year since 2015." (R. at 593.) Dr. Russ noted that Plaintiff's prognosis was fair and will progressively worsen. (R. at 593.) When identifying all of Plaintiff's symptoms "including pain, dizziness, fatigue, etc. …" Dr. Russ only wrote Plaintiff had knee pain. (R. at 593.) Dr. Russ characterized Plaintiff's knee pain as sharp, stabbing pain at the medial joint line bilaterally. (R. at 593.) Further, Dr. Russ noted the pain was with weight bearing and stairs at a 5-6/10. (R. at 593.) Dr. Russ was asked to identify any objective signs of Plaintiff's condition. (R. at 593.) Dr. Russ noted that Plaintiff's right and left knee had reduced range of motion, joint warmth, crepitus, swelling, and abnormal gait. (R. at 593.) Dr. Russ opined Plaintiff could walk one city block without rest or severe pain. (R. at 594.) When asked about Plaintiff's standing limitations, Dr. Russ noted Plaintiff could stand/walk for fifteen minutes at one time, and only stand/walk less than two hours within an eight-hour workday. (R. at 594.) Further, Dr. Russ noted that Plaintiff would need to shift from sitting to standing or walking at will. (R. at 594.) Plaintiff would also need to walk approximately after 60 minutes for about five minutes. (R. at 594-95.) When questioned about Plaintiff's ability to sit, Dr. Russ opined Plaintiff would be able to sit for forty-five minutes at one time and could sit for four hours within an eight-hour workday. (R. at 594.)

  Dr. Russ opined Plaintiff would need to take unscheduled breaks from time to time for about ten minutes. (R. at 595.) Dr. Russ stated Plaintiff's legs would not need to be elevated when

sitting. (R. at 595.) However, he later opined that Plaintiff's legs would need to be elevated for ten percent of an eight-hour working day. (R. at 595.) Further, Dr. Russ opined Plaintiff would need to use knee braces. (R. at 595.)

Dr. Russ was then asked about how much weight Plaintiff would lift and carry in a competitive work situation. (R. at 595.) He found Plaintiff could frequently[8] carry less than ten pounds, occasionally[9] carry ten to twenty pounds, and could never carry fifty pounds. (R. at 595.) Dr. Russ opined Plaintiff could never stoop, crouch, squat, or climb ladders. (R. at 595.) Plaintiff could occasionally twist. (R. at 595.) Further, he could rarely[10] climb stairs. (R. at 595.) Dr. Russ noted Plaintiff had no significant limitations with reaching, handling, or fingering. (R. at 595.)

Dr. Russ found that Plaintiff would be off task for 10 percent of the day and was capable of "moderate stress – normal work." (R. at 596.) Plaintiff's impairments were likely to produce good and bad days. (R. at 596.) Dr. Russ found Plaintiff would miss work about two days a month due to his impairments or treatment. (R. at 596.)

Dr. Russ also submitted a document regarding major dysfunction of a weight bearing joint. (R. at 598-99.) Within that document he opined that Plaintiff's dysfunction was confirmed by x-rays of both knees, and early indications of arthritis. (R. at 598.) He noted Plaintiff has evidence of chronic pain and stiffness, and his range of motion was diminished in the effected joint. (R. at 598.) He noticed that flexion is limited to 120 degrees in each knee. (R. at 598.) Dr. Russ found Plaintiff could: (1) "walk a block at a reasonable pace on rough or uneven surfaces"; (2) "use standard public transportation including climbing into/out of a bus and tolerate the typical jostling

---

[8] Frequently is defined as 34% to 66% of an eight-hour workday. (R. at 595.)

[9] Occasionally is defined as 6% to 33% of an eight-hour workday. (R. at 595.)   [10] Rarely is defined as 1% to 5% of an eight-hour workday. (R. at 595.)

on a bus; and (3) "climb several stairs at a reasonable pace with use of only a single hand-rail", for a sustained basis without companion assistance. (R. at 599.) Dr. Russ noted Plaintiff needed to use knee braces as an assistive device to ambulate. (R. at 599.)

   c.  <u>Analysis of the ALJ's Findings.</u>

  The ALJ summarized the opinions of Dr. Russ and found them unpersuasive. (R. at 25-26.) The ALJ reasoned that:

> The opinions are not well supported in that the proposed less-than-sedentary limitations appear inconsistent with Dr. Russ's concurrent statements about activities [Plaintiff] could perform on a sustained basis, including using public transportation, climbing stairs, shopping, and banking, even assuming that he needed to wear knee braces when performing such activities. Further, the objective findings cited by Dr. Russ, such as "early arthritic changes in both knees," do not obviously support the more extreme and disabling limitations he proposed. . . . Dr. Russ's opinions are also inconsistent with other evidence, including [Plaintiff's] own reports to his other medical providers about his activity level . . . . The statement about medical equivalency to listing 1.02 is a statement on an issue reserved to the Commissioner, and is therefore considered inherently neither valuable nor persuasive under the regulations.

 (R. at 26.)

  In challenging the ALJ's treatment of the medical opinions of Dr. Russ, Plaintiff appears to argue that the ALJ erred in his findings because Dr. Russ is Plaintiff's treating doctor, and the medical evidence and testimony supports Dr. Russ's opinions therefore the opinions deserve great weight. (Pl.'s Mem. at 12-13.) However, this argument misunderstands the standard by which this Court is to review the ALJ's decision. It is Plaintiff's duty to both produce evidence and prove that he is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The undersigned is charged with reviewing the Commissioner's decision to deny Plaintiff's application to determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's

findings are supported by substantial evidence. *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).

The substantial evidence standard "presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a de novo review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, 2010 U.S. Dist. LEXIS 142595, *9 (W.D.N.C. 2011).

Therefore, the issue before this Court is whether the ALJ's finding that Plaintiff is not disabled is properly explained and supported by substantial evidence and that such decision was reached based upon a correct application of the relevant law. As stated above, the regulations require that the ALJ explain how he considered the consistency and supportability of the medical opinion and why—based on the evidence—the ALJ reached the particular conclusion he did as to the persuasiveness of the opinion. See 20 C.F.R. § 404.1520c(a)–(b). The ALJ satisfied that standard here.

It is clear from the plain language in the ALJ's decision that the ALJ: (1) explicitly articulated the supportability and consistency of the opinion of Dr. Russ in accordance with the

regulations; and (2) built a logical bridge from the evidence to his conclusion. (R. at 25-26.) The ALJ explained that Dr. Russ's asserted limitations were inconsistent with other assertions Dr. Russ made. (R. at 26.) Further the ALJ noted that Dr. Russ's asserted limitations conflicted with Plaintiff's reports of his activities to other providers. (R. at 26 citing 423, 457, 461.) Dr. Russ cited early arthritic changes in both knees as objective evidence supporting his opinion. (R. at 26.) The ALJ noted that these objective findings do not support the "more extreme and disabling limitations [Dr. Russ] proposed." (R. at 26.)  The ALJ found the opinions of Dr. Russ to be inconsistent. (R. at 26.). For example, Dr. Russ asserted Plaintiff could: (1) rarely climb stairs (R. at 595); and (2) climb several stairs at a reasonable pace on a sustained basis with use of only a single handrail but without companion assistance. (R. at 599.)

Having reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determination that Dr. Russ was unpersuasive. (R. at 26.) Dr. Russ's opinion on this matter is belied by Plaintiff's assertions to other providers that he could still do housework and yard work. (R. at 825, 828, 830, 832, 834.) A review of the ALJ's decision indicates that the ALJ built a logical bridge from the evidence to his conclusion, as the records demonstrate instances in which Plaintiff reported greater abilities than Dr. Russ opined. Upon review of the record and the ALJ's decision, the Court finds that: (1) the ALJ sufficiently articulated his reasoning for finding the medical opinion of Dr. Russ not persuasive; and (2) substantial evidence supports the ALJ's residual functional capacity assessment.

### C. Substantial evidence supports the ALJ's finding that Plaintiff was able to perform other jobs that exist in significant numbers in the national economy.

Plaintiff argues that the ALJ erred in holding that jobs exist in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and residual functional capacity. (Pl.'s Mem. at 13-15.) Specifically, Plaintiff cites to other cases in

19

which job totals of approximately 5,000 in the national economy were found to be insufficiently significant, and further argues that the VE did not offer evidence to indicate how many of the jobs indicated are available in Plaintiff's region. (Pl.'s Mem. at 15.) Defendant argues that Plaintiff's cited cases reflect totals much lower than the 18,300 found by the VE in the instant case, and in response cites numerous cases in which totals of 10,000 or fewer were found to be sufficiently significant. (Def.'s Mem. at 19-22.) As explained below, the undersigned finds no error in the ALJ's finding that 18,300 jobs in the national economy is "significant."

Step five of the evaluation process requires the ALJ to consider a claimant's residual functional capacity, age, education, and work experience in determining whether the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(4)(v), 416.920(4)(v). When making this determination, the ALJ can use various resources, including the testimony of a VE. 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)(e). The ALJ, however, is not required to accept the VE's testimony. *Perez v. Barnhart*, 440 F. Supp. 2d 229, 232 (W.D. N.Y. 2006).

Here, the VE testified regarding the availability of jobs in the national economy. (R. at 48-52.) Plaintiff contends that the VE's testimony is insufficient to establish a significant number of jobs in the national economy which Plaintiff could perform as the VE did not examine how many of those positions were available in his region. (Pl.'s Mem at 15.)

For work to be found in significant numbers, it may exist either in the region in which the claimant lives or "in several other regions of the country." § 404.1566(a). The regulations specify that it "does not matter" whether work exists in the claimant's immediate area, a specific job vacancy exists for the claimant, or if the claimant would be hired for work. § 404.1566(a)(1)-(3). "Work exists in the national economy when there is a significant number of jobs (in one or more

occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications." § 404.1566(b).

The Fourth Circuit has not specifically established the minimum number of jobs necessary to satisfy a "significant number," but has stated in dicta that as few as 110 regional jobs is significant. *Hicks v. Califano*, 600 F.2d 1048, 1051 (4th Cir. 1979); *see also Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (finding 174 regional jobs to be significant). Other courts, as Plaintiff notes in his brief, have generally held that the difference between a significant number and an insignificant number hovers near 4,000 to 5,000 positions in the national economy. (Pl.'s Mem. 14-15.) Plaintiff further argues that each position the VE identified had between 4,000 and 7,000 positions available nationally and 4,000 to 7,000 positions is not a significant number nationwide. (Pl.'s Mem at 15.) However, Plaintiff erroneously refers to "6,000 or 7,000 positions" in the national economy without aggregating the number of jobs cited by the VE, thereby ignoring the plain text of 20 C.F.R. § 416.966. 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations.)"); *see also Frierson v. Berryhill*, 693 Fed. Appx. 660, 662 (9th Cir. 2017) (the ALJ properly aggregated three occupations to determine that a claimant could perform jobs existing in significant numbers in the national economy); *Lash v. Comm'r of Soc. Sec.*, No. 12-13472, 2015 U.S. Dist. LEXIS 70760, 2015 WL 3505875, at *3 (E.D. Mich. June 2, 2015) ("[C]ourts routinely aggregate numbers of jobs from different categories when determining whether available jobs exist in the national economy."); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (adding number of hospital laundry worker jobs to number of garment sorter jobs).

According to the VE's statements, Plaintiff is capable of performing occupations with approximately 18,300 jobs in the national economy. (R. at 28.) District Courts in the Fourth Circuit

have affirmed an ALJ's reliance on national job figures to satisfy the burden to demonstrate available employment. *Sylvia M. v. Saul*, No. 3:19cv428, 2020 U.S. Dist. LEXIS 155561, 2020 WL 5047066, at \*3 (E.D. Va. Aug. 26, 2020) (citations omitted). Plaintiff does not contend the jobs in all three categories identified would exist only in limited numbers in isolated regions of the country. *See McCall*, 844 F. App'x at 681. Therefore, the Commissioner's conclusion that 18,300 jobs in the national economy is "significant," is supported by substantial evidence. *See, e.g., Vining v. Astrue*, 720 F. Supp. 2d 126 (D. Me. 2010) (finding that 11,000 jobs is significant)); *Johnson*, 108 F.3d 178, 180 (8th Cir. 1997) (finding that 10,000 jobs is significant).

Plaintiff also argues that the VE should have articulated how many jobs existed in Plaintiff's region. (Pl.'s Mem. at 15.) An ALJ can satisfy his burden at step five by identifying jobs that exist either nationally or in the local economy, so long as there is nothing to suggest the job would exist only in isolated locations. *McCall v. Saul*, 844 F. App'x 680, 681 (4th Cir. 2021) ("We hold that evidence of jobs existing nationally constitutes evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country.").

Although Plaintiff encourages this Court to find that the ALJ should have calculated how many positions are available in Plaintiff's region for the identified representative occupations, Plaintiff has not demonstrated that anything in the number of jobs at issue or the nature of the jobs indicates that those jobs exist only in limited numbers in isolated regions of the country. Therefore, for the reasons stated above, the Court finds that substantial evidence supports the ALJ's step five determination that Plaintiff can perform other work that exists in significant numbers in the national economy.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 17) and Motion to Remand (ECF No. 19) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

 

 

 

/s/ MRC
_____
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: August 8, 2022

23